Marti WILLIAMS, Individually and as next friend of Michael Williams and Linda Smiley, Individually and as next friend of Courtney Smith, Appellants,

v.

AKZO NOBEL CHEMICALS, INC., f/k/a Akzo Chemicals, Inc., et al., Appellees.

No. 12–97–00295–CV.

Court of Appeals of Texas, Tyler.

June 30, 1999.

Robert W. Buchholz, Dallas, for appellants.

Jeffrey M. Tillotson, Dallas, James M. Garner, New Orleans, LA, Gregory D. Smith, Tyler, F. Walter Conrad, Houston, Don David Martinson, Phillip S. Brown, Diana C. Dutton, Dallas, Robert G. Newman, San Antonio, Sally A. Longroy, Dale Gene Markland, William Stephen Boyd, Dallas, for appellees.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

TOM B. RAMEY, Jr., Chief Justice.

Appellants,[1] brought suit against Appellees,[2] a hazardous waste disposal facility and numerous related entities and companies that generate waste sent to the disposal facility. During the discovery process, the trial court dismissed Appellants' claims for failure to comply with a court order. Appellants assert that the trial court erred in entering the order and in dismissing their claims. We reverse the trial court's orders of dismissal and remand the case to the trial court for further proceedings.

Appellants filed this lawsuit in October of 1993, alleging that they suffered personal injuries and property damage as a result of continuing exposure to toxic emissions released from the Facility. Both sides served interrogatories and requests for production on the other in mid–1995. Unhappy with Appellants' responses, some of the Appellees filed a motion to compel and for sanctions. However, before the scheduled hearing, the parties came to an agreement and no ruling was obtained on the motion. Because Appellees felt that Appellants did not comply with that agreement, they filed another motion to compel and for sanctions. The result was an agreed order entered March 16, 1996, which ordered Appellants to further respond to discovery within a specified period. The order did not mention sanctions.

The parties continued to spar with discovery requests and objections for several months. In November 1996 many Appellees filed a motion for entry of a case management order ("CMO"). The stated purpose of the order was to narrow the issues, streamline discovery, and weed out meritless claims. The movants also sought to obtain consistent treatment concerning all "companion cases."[3] Movants asked the court to order Appellants to provide affidavits from experts specifying the illness or condition attributable to exposure to substances from the Facility, naming the substances, stating when and how the exposure occurred, naming which Appellee is responsible, and explaining the basis of the expert's opinion. Movants also asked for a stay of discovery. They did not ask for sanctions.

A hearing was held on the motion on December 20, 1996, at which the court heard arguments from both sides. Movants explained that they wanted an order requiring Appellants to produce affidavits supporting the basic elements of their case

---

**1.** Marti Williams, individually and as next friend of Michael Williams, and Linda Smiley, individually and as next friend of Courtney Smiley.

**2.** American Ecology Environmental Services Corporation, formerly known as Gibraltar Chemical Resources, Inc. ("the Facility"), American Ecology Corporation, American Ecology Management Corporation, Mobley Environmental Services, Inc., Mobley Company, Inc., David Mobley, James Mobley, Thomas Mobley, Numetco, SSI Mobley, Dixie Chemical Company, Texas Utilities Electric Company, Arco Chemical Company, Houston Lighting & Power Company, Lyondell Petrochemical Company, Motorola, Inc., Phillips 66 Company, Safety–Kleen Corporation, The Sherwin–Williams Company, Texaco, Inc., American Airlines, AnaLab Corporation, Aptus, Inc., Aviall, Inc., Akzo Nobel Chemicals, Inc., Chemical Leaman Tank Lines, Inc., Cedar Chemical Corporation, Chromium Corpo-

ration, Devoe & Raynolds, Company, Helena Chemical Company, Hitachi, Semiconductor of America, Inc., Hoechst Celenese Corporation, Intercontinental Manufacturing Company, International Business Machines, Inc., Laidlaw Environmental Serves (TES), Inc., The Lubrizol Corporation, McDonnell Douglas Corporation, Mobil Oil Corporation, Mobil Chemical Corporation, Phelps Dodge Refining Corporation, Pure Solve, Inc., Rho–Chem, Inc., Sandoz Agro, Inc., Solvent Service Company, Inc., Texas Instruments Incorporated, Texas Electric Cooperatives, Inc., The Valspar Corporation, United States Pollution Control, Inc., and Zoecon Corporation.

**3.** At the time, there were also other similar cases pending in other courts involving the same defendants and attorneys, but different plaintiffs.

so that Movants could defend against specific allegations. After Appellants have provided that information, Movants asserted, the case should proceed in accordance with the court's normal scheduling order. Appellants argued against entry of the CMO, stating that the appropriate course for Movants was to file special exceptions. While they have obtained some documents from some Appellees, Appellants argued, those documents are general and incomplete. Appellants asserted that they could not provide the affidavits requested by Movants, with the level of specificity requested, without doing further discovery. The trial court stated on the record that "at this time I'm going to enter the case management order as requested by the Defendants." The court also announced a stay of discovery. The specific terms of the order were not dictated into the record. The court also stated that it would review the affidavits when presented and would consider amendments to the order at that time.

A written CMO was signed on January 15, 1997. That order required Appellants to present, on or before sixty days after the date of the order, affidavits from experts describing the injury or condition suffered by each plaintiff that was caused by exposure to materials from the Facility, identifying the substance that caused the injury, the manner, date, time, duration, and dosage of each incident of exposure and the source of each substance. The order also required the affidavits to include a description of the scientific and medical bases for the expert's opinions. Also included was the decree "that any plaintiff that fails to comply with this order shall have his or her claims dismissed." Finally, the order stayed all discovery as to all parties until thirty days after the submission of the affidavits.

On March 3, 1997, Appellants filed a motion to reconsider the CMO. They claimed that the documents they have are incomplete and not specific. They asserted that certain Appellees can supply them with the information they need to comply with the CMO. Therefore, they requested that the discovery stay be lifted and they be allowed additional time to obtain the required affidavits. Alternatively, if the stay was to remain in place, they requested an additional thirty days to obtain the affidavits.

A hearing was held on the motion to reconsider on April 4, 1997. Appellants argued that they need documents from Appellees showing what was shipped, what specific materials were in the waste stream, their concentrations, when they were shipped, where they were shipped and confirmation that they were received. Appellants claimed they could not provide affidavits in the absence of this information. Appellees asserted that the Facility had made available for review by Appellants over 200,000 documents and Appellants had reviewed and copied a large number of these documents. Further, some defendants had notified Appellants that documents were available for their review but Appellants never made arrangements to review those documents. Finally, Appellees pointed out that Appellants actually reviewed documents produced by other defendants and made some copies of those documents. Even so, Appellants did not provide affidavits concerning their claims against those defendants. The court invited motions to dismiss for its consideration and delayed ruling on Appellants' pending motion. The court, however, explicitly stated that the discovery stay was still in effect.

Thereafter, Appellees moved the court to dismiss Appellants' claims for failure to comply with the CMO. The court signed motions to dismiss the claims against most defendants on May 12, 13, 15, and 21, 1997. Pursuant to Appellees' request to enter an amended order, the trial court entered amended orders of dismissal on September

9 and 12, 1997, dismissing Appellants' claims against fifty defendants. The amended orders more completely explain the grounds for dismissal against those fifty defendants. The orders state that those dismissals were justified under Texas Rules of Civil Procedure 13, 166, and 215, and the court's inherent power.

■ Initially, we consider an issue raised by Appellants in their supplemental brief concerning whether the trial court had jurisdiction to enter the amended orders. They assert that, because they filed motions for new trial concerning all of the May dismissal orders, the trial court's plenary jurisdiction ended, at the latest, seventy-five days after May 21, on August 4, 1997. Therefore, they argue, the court did not have jurisdiction when it signed the September orders.

■ A trial court has plenary jurisdiction over its judgment until it becomes final. *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex.1993) (per curiam). The trial court also retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered. *Id.* To be final a judgment must dispose of all issues and parties in a case. *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966). Any action taken by the trial court after the expiration of its plenary jurisdiction is a nullity. *See Jackson v. Van Winkle*, 660 S.W.2d 807, 808 (Tex.1983).

Here, the trial court signed dismissal orders in May disposing of most defendants. However, those orders did not dispose of all defendants. Defendants Eagle–Picher Industries and Atrium Doors and Windows were not included in those orders. Eagle–Picher Industries was non-suited by order dated September 2, 1997, and Atrium Doors and Windows was non-suited on November 3, 1997. Therefore, the May dismissal orders were interlocu-

tory and not final. *See Aldridge*, 400 S.W.2d at 895. Accordingly, the trial court had jurisdiction to enter the September orders. *See Carrillo*, 848 S.W.2d at 84. We overrule Appellants' supplemental issue.

We address now Appellants' second issue, which is dispositive of the case. In their second issue, Appellants contend that the trial court erred in dismissing their claims because death penalty sanctions were not proper. We agree. The trial court's orders rely on rules of civil procedure 13, 166, and 215 and the court's inherent power as justification for the dismissals. We conclude that the dismissals cannot be upheld under any of these grounds.

■■ In order to assist in the disposition of the case, rule 166 permits trial courts to hold pretrial conferences and to enter orders establishing the agreements of the parties as to any of the matters considered which controls the subsequent course of the case up to trial. Tex.R. Civ. P. 166. The trial court has power, implicit under rule 166, to sanction for failing to obey the court's pretrial orders. *Koslow's v. Mackie*, 796 S.W.2d 700, 703 (Tex.1990). Rule 215 authorizes a trial court to impose sanctions for violations of discovery orders or for abuse of the discovery process. Tex.R. Civ. P. 215.

■ Imposing an available sanction for a violation of rules 166 or 215 is left to the sound discretion of the trial court. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991) (orig.proceeding); *Koslow's*, 796 S.W.2d at 704. An appellate court will set aside the decision only on a showing of a clear abuse of discretion. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or whether under all the circumstances of the particular case the trial court's action was arbitrary or unreason-

able. *Koslow's,* 796 S.W.2d at 704. The circumstances of the case include the reasons offered and proved or established as a matter of law on the record. *Id.*

If the sanctions imposed are not just, a trial court abuses its discretion. *TransAmerican,* 811 S.W.2d at 917. To determine whether sanctions are just we apply a two-prong test. The first prong requires that a direct relationship exist between the offensive conduct and the sanction imposed. *Id.* Under this prong, the trial court should attempt to determine if the offensive conduct is attributable to the attorney, the party, or both. *Id.* The second prong requires that the sanctions must be no more severe than necessary to satisfy its legitimate purposes. *Id.*

A death penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the merits of the case. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 845 (Tex.1992). Such sanctions should not be assessed absent a party's flagrant bad faith or counsel's .callous disregard for the responsibilities of discovery under the rules. *Id.* at 849. Discovery sanctions should not be used to adjudicate the merits of a claim unless a party's obstruction of the discovery process justifies the presumption that the claim lacks merit. *TransAmerican,* 811 S.W.2d at 918. Even then, lesser sanctions should be tested first to determine if they are adequate to secure compliance, deterrence, and punishment of the offender. *Hamill v. Level,* 917 S.W.2d 15, 16 n. 1 (Tex.1996) (per curiam); *Chrysler Corp.,* 841 S.W.2d at 849; *Humphreys v. Meadows,* 938 S.W.2d 750, 752 (Tex.App.—Fort Worth 1996, writ denied). In exceptional situations, determinative sanctions may be imposed in the first instance when they are clearly justified and no lesser sanctions will promote compliance. *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729 (Tex.1993) (orig.proceeding).

The trial court has inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process. *Metzger v. Sebek,* 892 S.W.2d 20, 51 (Tex.App.—Houston [1st Dist.] 1994, writ denied), *cert. denied,* 516 U.S. 868, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995); *Shook v. Gilmore & Tatge Mfg. Co.,* 851 S.W.2d 887, 891 (Tex. App.—Waco 1993, writ denied); *Kutch v. Del Mar College,* 831 S.W.2d 506, 509 (Tex. App.—Corpus Christi 1992, no writ). For inherent power to apply, there must be some evidence and factual findings that the conduct complained of significantly interfered with the court's administration of its core functions: hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, entering final judgment, and enforcing that judgment. *Shook,* 851 S.W.2d at 891; *Kutch,* 831 S.W.2d at 510. However, the rights of litigants may not be infringed by this power. *Shook,* 851 S.W.2d at 891. Therefore, a sanction imposed pursuant to the court's inherent power must be just and appropriate. *Id.* The appellate court applies the test set out in *TransAmerican* to determine whether sanctions imposed under the trial court's inherent power were proper or an abuse of discretion. *Shook,* 851 S.W.2d at 892; *Kutch,* 831 S.W.2d at 512.

Initially, we consider the first prong of the *TransAmerican* test, whether there is a direct relationship between the offensive conduct and the sanction imposed. At the April 4 hearing, the court heard argument by counsel for each side. No evidence was presented. The trial court made no attempt to determine if the offensive conduct is attributable to the parties, the attorneys, or both. Therefore, the trial court could make no determination as to whether there was a direct relationship between the failure to comply with the CMO and the death penalty sanction. The first prong of the *TransAmerican* test has not been met.

■ We turn now to the second prong which requires that the sanctions be no more severe than necessary. As explained above, the Supreme Court requires a trial court to attempt to obtain compliance with its orders by first ordering sanctions that are not case determinative. *Hamill*, 917 S.W.2d at 16 n. 1; *Chrysler Corp.*, 841 S.W.2d at 849. The trial court was authorized to assess any of several lesser sanctions. Rule 215 provides a partial list including disallowing further discovery, charging discovery expenses to the disobedient party, ordering that certain designated facts shall be taken as established, refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence, or holding the disobedient party in contempt. TEX.R. CIV. P. 215.2(b). Additionally, the trial court may require a party to pay attorney's fees or order other monetary sanctions such as heavy fines. *See Bosnich v. National Cellulose Corp.*, 676 S.W.2d 446, 447–48 (Tex.App.—Houston [1 st Dist.] 1984, no writ).

■ No written orders relating to discovery or compelling discovery had been entered prior to entry of the CMO. The trial judge did not impose any lesser sanctions prior to dismissing Appellants' claims. Even assuming that the CMO should be characterized as an order to compel, entry of an order to compel cannot be construed as a lesser sanction under rule 215. *Westfall Family Farms v. King Ranch*, 852 S.W.2d 587, 592 (Tex.App.—Dallas 1993, writ denied). Although the dismissal orders recite that the trial court considered lesser sanctions, this does not satisfy the requirement that the trial court first impose lesser sanctions before entering death penalty sanctions. *See Hamill*, 917 S.W.2d at 16 n. 1; *Chrysler Corp.*, 841 S.W.2d at 849. Although the CMO included a warning that noncompliance would result in dismissal, neither a threat to

sanction, without more, nor the intent to sanction, is a sanction. *See* TEX.R. CIV. P. 215(2)(b); *Chrysler Corp.*, 841 S.W.2d at 850; *GTE Mobilnet of South Tex. Ltd. Partnership v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 298 (Tex.App.—Houston [1st Dist.] 1997, writ denied) (on reh'g). The CMO is not a sanction. It is an order and a threat. Thus, the trial court did not impose any lesser sanctions before dismissing Appellants' claims in compliance with the general rule.

Appellees direct our attention to *Andras v. Memorial Hospital System*, 888 S.W.2d 567 (Tex.App.—Houston [1 st Dist.] 1994, writ denied), to which the trial court cited in its dismissal orders. In *Andras*, the First District Court of Appeals held that an order to compel coupled with a threat to dismiss for noncompliance is a lesser sanction within the meaning of *Chrysler Corporation*. *Andras*, 888 S.W.2d at 573. Because we conclude that the Supreme Court requires that a lesser sanction actually be assessed to further test compliance before imposition of the death penalty, we decline to follow the *Andras* court in that respect.

■ Finally, we consider whether this case presents an exceptional situation where determinative sanctions should be imposed in the first instance. Case determinative sanctions would be appropriate here only if clearly justified and if it is fully apparent that no lesser sanctions would promote compliance with the rules. *See Tanner*, 856 S.W.2d at 729. Both amended dismissal orders contain the following: "Lesser sanctions would not promote compliance and discourage further abuse. If the threat of "death penalty" sanctions was not enough to promote compliance with the Court's CMO, lesser sanctions would not promote compliance either." We are unpersuaded by the Court's circular logic. Noncompliance in the face of a threat of death penalty sanc-

tions cannot justify the failure to impose lesser sanctions in the first instance. There is nothing in the record to indicate that some lesser sanction would not have been effective to promote compliance. *See id.* at 729–30.

▮ The sanctions imposed by the trial court precluded Appellants from presenting the merits of their case. Before a court may deprive a party of its right to present the merits of its case because of discovery abuse, it must determine that a party's hindrance of the discovery process justifies a presumption that its claims lack merit. *TransAmerican,* 811 S.W.2d at 918. No such presumption is warranted here. Appellants did not refuse to provide discovery. That their original answers were incomplete or even intentionally evasive is not such an obstruction of discovery to justify the conclusion that their claims lacked merit without more. *Lanfear v. Blackmon,* 827 S.W.2d 87, 90–91 (Tex.Civ. App.—Corpus Christi 1992, orig. proceeding). Appellants did not, at any time, refuse to comply with the CMO. They asserted that they were unable to comply without more information and more time. Over fifty defendants were involved. The information Appellants had to sift through was voluminous and of a technical nature. Given these facts, we do not conclude that this was such flagrant bad faith or callous disregard to preclude a trial on the merits. *See Perez v. Murff,* 972 S.W.2d 78, 83 (Tex.App.—Texarkana 1998, writ denied). Appellants' failure to comply with the CMO does not justify the presumption that their claims lack merit. *See Hamill,* 917 S.W.2d at 16. Accordingly, death penalty sanctions are not justified. *See Tanner,* 856 S.W.2d at 730.

The trial court imposed no lesser sanctions as required by *TransAmerican.* It has not been shown that lesser sanctions would have been totally ineffective. *See Tanner,* 856 S.W.2d at 729. The record does not support a presumption that Appellants' claims lack merit thereby justifying a death penalty sanction. *See id.* at 730. We conclude, therefore, that the trial court's imposition of death penalty sanctions was not "just" under the standards set out in *TransAmerican.* Accordingly, the trial court abused its discretion in entering the dismissal orders pursuant to rules of civil procedure 166 and 215 and the court's inherent power.

▮ Rule 13 authorizes the imposition of sanctions against an attorney, a represented party, or both, who files pleadings, motions, or other papers that are both groundless and brought in bad faith or to harass. TEX.R. CIV. P. 13. The court may impose any appropriate sanction available under rule 215(2)(b). *Id.* "Groundless" means without basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. *Id.* Before a trial court may impose sanctions under rule 13, it must hold an evidentiary hearing. *Id.* We set aside the trial court's decision to impose rule 13 sanctions upon a showing of abuse of discretion. *Monroe v. Grider,* 884 S.W.2d 811, 816 (Tex.App.— Dallas 1994, writ denied).

▮ When determining whether rule 13 sanctions are proper, the trial court must examine the circumstances existing when the litigant filed the pleadings. *Id.* at 817. Courts should presume parties and their counsel file all papers in good faith and the party seeking sanctions must overcome that presumption. *Tanner,* 856 S.W.2d at 731. Further, the trial court can presume that a plaintiff has investigated his case prior to filing. *McAllister v. Samuels,* 857 S.W.2d 768, 773 (Tex.App.— Houston [14th Dist.] 1993, no writ). The party seeking sanctions has the burden of showing his right to relief. *Tanner,* 856 S.W.2d at 731. Motions and arguments of counsel are not evidence. *McCain v.*

**846** 

*NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex.App.—Dallas 1993, no writ).

 The dismissal orders stated that the April 4, 1997 hearing was an evidentiary hearing held under rule 13 and Appellants had the opportunity to submit any evidence. Further, according to the dismissal orders, Appellants' lack of compliance with the CMO and the excuses offered by Appellants at the April 4 hearing, demonstrated that Appellants' claims and their pleadings were groundless and brought in bad faith or to harass. The reporter's record of the hearing confirms that no evidence was presented. Without hearing evidence on the circumstances surrounding the filing of the pleading and the signer's credibility and motives, the trial court had no evidence to determine that the Appellants or their attorneys filed the pleading in bad faith or to harass. Further, as evidenced by the language in the dismissal orders, the trial court improperly placed the burden on Appellants to prove good faith. The trial court must presume good faith and Appellees had the burden to prove bad faith or that the claim was brought to harass. *Tanner*, 856 S.W.2d at 731. Appellees did not meet their burden to prove an element of rule 13. Therefore, the record does not support the imposition of the ordered sanctions.

 Further, rule 13 requires that the sanctions assessed be appropriate. *Tanner*, 856 S.W.2d at 731. Rule 13's "appropriate" standard is equivalent to rule 215's "just" standard. *Id.* Thus, to determine whether sanctions imposed for violating rule 13 are appropriate, we employ the same test used to determine whether sanctions imposed by rule 215 are just. *Metzger*, 892 S.W.2d at 53. As explained above, the sanction employed by the trial court was more severe than authorized and not just. While this Court does not condone filing a lawsuit without first investigating to determine if the plaintiff has a viable case, unless a case meets the requirements of *Tanner*'s exception, it should not be finally concluded without first imposing lesser sanctions to obtain compliance with court orders. Accordingly, the trial court abused its discretion in dismissing Appellants' claims pursuant to rule 13.

We conclude that the trial court was not justified in imposing death penalty sanctions under rules of civil procedure 13, 166, or 215, or under the trial court's inherent power. Accordingly, we sustain Appellants' second issue. Our disposition of Appellants' second issue makes it unnecessary for us to consider Appellants' remaining issues. Tex.R.App. P. 47.1.

We reverse the trial court's orders of dismissal and remand this cause to the trial court for further proceedings consistent with this opinion.