NO. 07-00-0143-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 23, 2002
_____

CARLA ROBERSON CUMMINGS,

Appellant

v.

GEORGE E. CIRE, JR., MARTHA K. ADAMS AND TAYLOR & CIRE,

Appellees
_____

FROM THE 55TH DISTRICT COURT OF HARRIS COUNTY;

NO. 1996-64747; HON. SHERRY RADACK, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Carla Roberson Cummings (Carla) appeals from a final judgment dismissing her lawsuit against George E. Cire, Jr., Martha K. Adams and Taylor & Cire (collectively referred to as Cire) for legal malpractice. The judgment was the natural consequence of the trial court's decision to strike Carla's pleadings. Through seven issues, she now complains that the trial court erred by 1) overruling her objections to discovery requests, 2) compelling her to answer deposition questions and interrogatories, 3) imposing "death

penalty" sanctions, 4) striking her pleadings, 5) denying her motion for new trial and 6) failing to grant her partial motion for summary judgment. We reverse.

### Denial of Carla's Summary Judgment

We address the complaint regarding the trial court's purported denial of Carla's motion for summary judgment first. In doing so, we note that the appellate record does not contain a signed order denying Carla's motion. Nor does Carla cite us to any such order illustrating that the trial court acted upon the motion. Instead, she merely references a docket entry wherein someone wrote "PARTIAL SJ DENIED;" who made that entry is unknown. Given these circumstances, we overrule the issue. Simply put, a court must act upon a motion before its substance can be considered on appeal. *See* TEX. RULE APP. PROC. 33.1 (discussing preservation of error and the need for the court to act upon the objection, request, or motion). And, the notation in the docket does not fill the void for it does not constitute a signed order for purposes of appeal. *First Nat'l. Bank of Giddings, Tex. v. Birnbaum,* 826 S.W.2d 189, 190-91 (Tex. App.--Austin 1992, no writ) (stating that docket entries do not take the place of a signed order or judgment).

Additionally, an order denying a motion for summary judgment is not reviewable on appeal. *Tobin v. Garcia,* 159 Tex. 58, 63, 316 S.W.2d 396, 400 (1958); *Adams v. Parker Square Bank*, 610 S.W.2d 250 (Tex. Civ. App. – Fort Worth 1980, no writ). And, while this may not be true if the trial court had before it cross-motions for summary judgment, each litigant had to have sought *final* judgment through their respective motion; seeking merely a partial summary judgment does not fall within the scope of the exception. *Montgomery*

2

*v.  Blue Cross and Blue Shield of Texas, Inc.*, 923 S.W.2d 147, 152 (Tex.  App. – Austin 1996, writ ref'd).  Here, Carla merely sought a partial summary judgment.

***Discovery Orders***

The objections to the trial court's discovery orders are considered in the chronology urged by Carla.

*November 4, 1997 Order*

The first decree complained of involves that signed on November 4, 1997. It was later substituted by an order signed on January 5, 1998. In each, the trial court sustained Cire's motion to compel Carla to answer interrogatories (save for interrogatories 12, 13, and 16) and provide documents responsive to various requests for production. So too did it order that Cire "recover from Plaintiff's *attorney* the sum of $250 [in] reasonable attorney's fees for the frivolous objections and evasive answers," even though Cire did not ask that sanctions be awarded against the attorney personally. (Emphasis added).

Carla asserts that the award of attorney's fees was improper because the court failed to hold an oral hearing to determine who committed the acts warranting the sanction. We disagree for a trial court need not hold an oral hearing to determine the matter of sanctions. *Meek v. Bishop, Peterson & Sharp, P.C.*, 919 S.W.2d 805, 809 (Tex. App.--Houston [14th Dist.] 1996, writ denied).

Next, Carla asserts various reasons why her objections to the discovery propounded by Cire (which objections the trial court rejected) were purportedly legitimate. Many of the assertions made before us, however, consist of nothing more than conclusion *sans* explanation, such as reasons two, three and four. Furthermore, some lack citation to authority such as reasons two, three and five. To that extent, Carla's assertions fail to comport with Texas Rule of Appellate Procedure 38.1(h) and present nothing for review.

4

*See Vasquez v. State,* 22 S.W.3d 28, 31 (Tex. App. – Amarillo 2000, no pet.) (holding that points of error which are simply conclusory or lack citation to authority are improperly briefed and, therefore, waived).

Additionally, the record also discloses that Carla failed to respond to Cire's motion to compel discovery. Under the local rules adopted and implemented by the trial court, this permitted the latter to conclude that she did not contest the relief sought in the motion. That is, the local rule (approved by the Texas Supreme Court on May 26, 1999), of which we can take judicial notice, *see Gordon v. Ward*, 822 S.W.2d 90, 92 (Tex. App.--Houston [1st Dist.] 1991, writ denied) (taking judicial notice of the same local rules), provided that the "[f]ailure to file a response [to a motion] may be considered a representation of no opposition." *Harris County Rules of the Civil Trial Division* 3.3.2. Thus, in failing to respond to the motion of Cire, the trial court was authorized to conclude that Carla had no objection to the relief sought. This is especially so when Carla does not suggest that she lacked knowledge or notice of the motion.[1]

*August 3, 1998 Order— Compelling Answers to Deposition Questions*

Next, Carla believes that the trial court erred in executing its August 3, 1998 order compelling her to answer various deposition questions. We disagree for the following reasons.

---

[1]Furthermore, doing nothing in the face of a pending motion then complaining on appeal runs afoul of the policy underlying Appellate Rule 33.1. The trial court should have first opportunity to resolve the dispute upon considering all the pertinent argument. In withholding argument from the court, that goal is impeded. Thus, the conduct of the party results and should result in waiver.

5

First, we again find no response by Carla to Cire's motion requesting that she be required to answer the deposition questions at issue. And, like her failure to reply to the motion to compel discussed above, this entitled the trial court to conclude that she did not oppose the relief sought. Again, this is especially so when Carla does not suggest that she lacked knowledge or notice of the motion or the date on which it was due to be submitted to the trial court for disposition.

Second, the assertions uttered before us by Carla are nothing more than conclusions without accompanying explanation of law or fact. This circumstance, as previously mentioned, results in the waiver of her complaints.

Third, the allegation that the court was obligated to conduct an oral hearing before granting the motion is incorrect. Again, a trial court need not hold such a hearing prior to resolving the discovery dispute. *Meek v. Bishop, Peterson & Sharp, P.C.*, *supra*. Furthermore, the sole case she cites as support of her contention, *McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72 (Tex. 1989), does not do so. That case deals with who had the burden to request a hearing. In resolving the dispute, the Supreme Court discussed Texas Rule of Civil Procedure 166b(4)(since superceded by Rule 193.4) and its prior decision of *Peeples v. Fourth Court of Appeals*, 701 S.W.2d 635 (1985). And, to the extent that it touched upon the matter of a hearing, it only said that the parties could present or establish their objections or claims of privilege at the hearing via live witnesses or affidavits. Yet, it did not say that the court *must have* a hearing wherein live testimony could be presented; nor did it foreclose the ability of a trial court to conduct a hearing by written submission.

6

Indeed, that the litigants could tender affidavits in support of or to defeat a claim and that such evidence could be appended to the motion to compel or response thereto connotes that some procedure other than the presentation of live testimony is allowed. In effect, the option to hold an oral hearing or merely act upon written submissions remains with the trial court, *see Meek v. Bishop, Peterson & Sharp, P.C.*, *supra*, and *McKinney* did not change that.

*August 3, 1998 Order — Compelling Answers to Interrogatories and Production of Documents*

Carla also complains about another discovery order signed by the trial court on August 3, 1998. It compelled her to answer various interrogatories propounded by Cire. We overrule this issue as well for the following reasons.

First, to the extent Carla posits that the order was "void" or unenforceable because it alluded to Cire by a different name and failed to specify "which Plaintiff was to comply," she again cites no legal authority. Nor does she provide us with anything other than conclusions. Thus, these contentions are waived due to insufficient briefing. TEX. R. APP. PROC. 38.1(h); *Vasquez v. State, supra*.

Second, to the extent that she posits that the doctrine of the law of the case precluded the court from entering the order, nothing of record indicates that a court of last resort previously had addressed the matter. That is pivotal since the authority she cites requires as much. Indeed, the panel in *Hansen v. Academy Corp.*, 961 S.W.2d 329, 333 (Tex. App.--Houston [1st Dist.] 1997, pet. denied) interpreted the "'law of the case" doctrine [as] stat[ing] that questions of law *decided on appeal to a court of last resort* will govern

7

the case throughout its later stages." *Hansen v. Academy Corp.*, 961 S.W.2d at 333. In other words, if there has been no prior appeal involving the very issue of discovery addressed by the trial court in its August 3rd order (which there has not), the doctrine of law of the case does not apply.

Third, to the extent Carla posits that she "fully" answered the interrogatories at issue before August 3rd, the record discloses that each answer was preceded by an objection and a statement that she did not intend or desire to waive the objection. So, despite her alleged answers, the validity of her objections remained a question to be addressed by the court. Moreover, assuming that Carla had answered the interrogatories before the court acted on August 3rd, the order in question assessed no sanction. So, we cannot see how she was harmed by it, and a showing of harm would be a prerequisite to any reversal. TEX. R. APP. PROC. 44.1.

Fourth, Carla suggests that the August 3rd order was unenforceable because it simply referred to the "'court's order of January 5, 1998' and the subpoena duces tecum served on May 27, 1998' without attaching same." Yet, she cites nothing which holds that the January 5th order and May subpoena had to be attached to the August order before the latter could be valid.[2] Nor does she argue that there were other orders issued on January 5th and other subpoenas duces tecum served on May 27th. Without this, we cannot accept the proposition that the August 3rd order was unenforceable because it

_____

[2]Her general citation to *Ex parte Herrera*, 820 S.W.2d 54 (Tex. App.--Houston [14th Dist.] 1991, orig. proceeding) is of no moment. It had nothing to do with the circumstances like those at bar. Rather, the court in *Herrera* merely addressed 1) whether the commitment order was void because there had been no prior order or judgment of contempt executed and 2) whether one can be held in contempt for an act that does not violate any prior order.

supposedly "placed [her] on peril of guessing which order of January 5 . . . or . . . 'subpoena duces tecum' . . . the trial court was referring to [sic]."

Fifth, so too do we reject the proposition that the order is void because the trial court could not have held Carla in contempt for violating it. Simply put, the order in question did not purport to hold her in contempt.

### *Sanctions — Striking the Pleadings*

Through her final points of error, Carla alleges that the trial court erred in issuing its "Order on Sanctions." Therein, it ordered that "the pleadings of Plaintiff Carla Roberson are stricken from this lawsuit." This allegedly constituted an abuse of discretion. We agree.

*Standard of Review*

It is clear that the decision to sanction a litigant for discovery abuse lies within the discretion of the trial court. *Estate of Riggins*, 937 S.W.2d 11, 16 (Tex. App.--Amarillo 1996, writ denied). Furthermore, we may not interfere with the decision unless it constitutes an abuse of discretion. *Id.* And, whether it does depends upon whether it comported with controlling rules and principals and, therefore, was not arbitrary and unreasonable. *See Williams v. Akzo Nobel Chemicals, Inc.*, 999 S.W.2d 836, 844 (Tex. App.--Tyler 1999, no pet.); *Estate of Riggins*, 937 S.W.2d at 16. The rules and principals applicable to addressing claims of discovery abuse follow.

First, there must be evidence that some discovery abuse occurred. *Tjernagel v. Roberts*, 928 S.W.2d 297, 304 (Tex. App.--Amarillo 1996, orig. proceeding). Second, in issuing the sanction, the trial court is not limited to considering only the specific violation

9

for which the sanction is finally imposed; everything that has occurred during the litigation may be weighed. *Estate of Riggins*, 937 S.W.2d at 16. Third, sanctions serve three purposes; that is, they serve to 1) punish those violating the rules of discovery, 2) deter other litigants from similar conduct, and 3) secure compliance with discovery rules. *Tjernagel v. Roberts*, 928 S.W.2d at 303. Fourth, a direct relationship between the offensive conduct and the sanction imposed must exist. *Hamill v. Level*, 917 S.W.2d 15, 16 (Tex. 1996); *Tjernagel v. Roberts*, 928 S.W.2d at 303. Fifth, the sanction imposed must not be excessive or more severe than necessary to achieve the purposes itemized above. *Id.* That is, the trial court must impose the least onerous sanction available that will fulfill the purpose underlying the sanction. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). So too must it explain why no lesser sanction would be appropriate. *Williams v. Akzo Nobel Chemicals, Inc.*, 999 S.W.2d at 844. Sixth, only when the party has acted in flagrant bad faith or his counsel has callously disregarded the responsibilities implicit in the discovery rules can the trial court consider sanctions which prevent disposition of the case on the merits; however, even then must lesser measures first be tested or considered. *Chrysler Corp. v. Blackmon*, 841 S.W.2d at 849; *Tjernagel v. Roberts*, 928 S.W.2d at 303.

Indeed, the Supreme Court "requires that a lesser sanction actually be assessed" first before imposition of one which effectively terminates the litigation, unless "it is fully apparent" that no lesser measure will secure compliance. *Williams v. Akzo Nobel Chemicals, Inc.*, 999 S.W.2d at 844. Additionally, the conduct involved must be sufficiently egregious to warrant a presumption that the misfeasant's claims or defenses lack merit.

10

*Hamill v. Level*, 917 S.W.2d at 16. Finally, should the measure actually levied be excessive, it is unjust, and an unjust sanction illustrates an instance of abused discretion. *Williams v. Akzo Nobel Chemicals, Inc.*, 999 S.W.2d at 843. With this said, we turn to the cause before us.

*Application of Standard*

It is apparent from the record that in striking Carla's pleadings the trial court effectively disposed of the litigation on grounds other than the actual merits. Simply put, the measure assessed for the purported discovery abuse was what has become known as a death penalty sanction for it resulted in her inability to pursue any claim or present any evidence at trial. Moreover, it was assessed because the trial court concluded that Carla 1) "flagrantly violated" four court orders pertaining to discovery by failing to comply with them "within the time allowed by the court," 2) hid "her relationship with other attorneys by refusing to answer deposition questions," 3) used "forged documents to gain an advantage with the court," and 4) "deliberately destroyed and/or concealed material evidence that would prove [her] claims" meritless.[3] The evidence withheld, according to the trial court, illustrated that her claims were meritless. Additionally, her attempts to inhibit discovery of the tapes and discovery in general were "without any justification" and constituted effort to "prevent [Cire] from obtaining the true facts and documents that pertain to [her] allegations in [the] suit." These circumstances also justified "a presumption that her claims [had] no merit," according to the trial court.

Finally, "less stringent sanctions [were] not required because [they] would be ineffective," the trial court held. This was so because Carla's destruction "and/or" concealment of the tapes "deprived [Cire] of that objective factual audio evidence." And, "[m]onetary sanctions [could not] cure [her] wrongdoing, such as destroying and

_____

[3]The evidence hidden or destroyed consisted of audio tapes of conversations between Carla and the attorneys she sued, *i.e.* Cire.

concealing . . . material evidence found on the . . . tapes." Finally, her failure and that of her counsel to pay "a small monetary sanction" previously levied by the court "indicate[d] blatant disregard for the court's order."

The foregoing excerpts from the court's order evinces that only once had the court previously issued sanctions. Furthermore, that sanction consisted of a $250 fine and was expressly assessed against "plaintiff's attorney," not Carla. Since Carla was not directed to pay it, one cannot reasonably deduce either that her failure to pay the sum evinced a blatant disregard for the order or that the assessment of a fine against her would simply be ignored by her.

Nor can it legitimately be said that her purported lack of economic resource to satisfy a monetary sanction somehow permitted the court to simply levy the death penalty. There are more ways to obtain compliance and further the purposes underlying the assessment of sanctions than merely levying a monetary penalty; holding the party in contempt was and is one alternative. *See GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729-30 (Tex. 1993) (noting contempt to be such an alternative); *Williams v. Akzo Nobel Chemicals, Inc.*, 999 S.W.2d at 844 (describing a myriad of possible sanctions). Nor does our system of justice countenance the assessment of the death penalty merely because a litigant lacks money to pay a fine. To hold otherwise would be to say that only those of greater economic worth may reap the benefit of our Supreme Court's directive to levy the least onerous, yet suitable, sanction.[4] In short, the *de*

_____

[4]We do not comment upon whether Carla had or has monetary funds sufficient to pay any fine or sanction. Indeed, the record illustrates that she was a beneficiary of a rather large monetary settlement in a related suit. We simply address the trial court's insinuation that her lack of finances somehow warrants

*minimus* economic status of a litigant potentially abusing discovery simply requires the trial court to invoke its imagination to derive other means to regulate and punish inappropriate behavior.

Next, and assuming *arguendo* that Carla intentionally destroyed, hid, or lost evidence favorable to Cire (*i.e.* the audio tapes), sanctions other than the death penalty exist to address the situation. Indeed, while dismissing the claims of a litigant destroying evidence may be appropriate at times, the Supreme Court noted the existence of other measures. *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998) (involving the spoliation of evidence). These alternative remedies, according to the court, may include an instruction to the jury directing it to presume that the missing evidence would be unfavorable to the party failing to produce it, *i.e.*, Carla. *Id.*; *see Watson v. Brazos Elec. Power Coop.*, 918 S.W.2d 639, 643 (Tex. App.–Waco 1996, writ denied) (describing the appropriate instruction). Yet, other than suggesting that Carla would ignore a monetary sanction (a supposition that we previously illustrated to be insupportable), the trial court did not indicate that it considered any alternative to simply striking the pleadings as a result of Carla's alleged spoliation or secretion of the tapes. Nor did it discuss why such a lesser measure would not suffice as an appropriate sanction. This it was obligated to do under *GTE Communications Sys. Corp.*[5]

---

imposition of death penalty sanctions.

[5]Nor can we construe the issuance of prior orders to compel as attempt to impose lesser sanctions. *Williams v. Akzo Nobel Chemicals, Inc.*, 999 S.W.2d 836, 844 (Tex. App.–Tyler 1999, no pet.).

In sum by simply ordering that Carla's pleadings be struck, the trial court failed to comport with Texas Supreme Court precedent. This does not mean that we condone the antics of Carla and her counsel. Their conduct may well deserve sanction, including the dismissal of the cause. We simply hold that before the death penalty sanction can be levied, the trial court must comply with *GTE Communications Sys. Corp.* and properly illustrate why lesser sanctions would not suffice. It did not do that here.

Accordingly, the order striking the pleadings of Carla and the final judgment entered against her are reversed. The cause is remanded to the trial court.

Brian Quinn
Justice

Publish.