NO. 07-06-0455-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 6, 2007


______________________________



TERRY J. MORRISON, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 137TH DISTRICT COURT OF HOCKLEY COUNTY;



NO. 2006-414,081; HON. CECIL G. PURYEAR, PRESIDING


_______________________________



MEMORANDUM OPINION


_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 Terry J. Morrison contends the evidence is legally and factually insufficient to
sustain his conviction of forgery of a financial instrument. We affirm the judgment.

 The standards by which we test the sufficiency of the evidence are well established
and are found in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)
and Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006). We refer the parties to
those cases. 

 Christopher Gonzalez, the owner of New Meaning Drywall, discovered that some
checks on his business account were missing. Thereafter, he closed his account. 

 On May 25, 2006, Lance Branscum delivered an order of pizzas to an apartment. 
Appellant answered the door but only wide enough to accept the pizzas and give
Branscum a check. The check was written against the closed account of Christopher
Gonzalez and had on its face the name "C. Michael Gonzalez d/b/a New Meaning Drywall." 
The address of the drywall business also appeared on it. Apparently because the
instrument contained the endorsement of a "Michael Gonzalez," appellant told Branscum
that it was from his roommate. However, the actual account owner testified that he did not
know appellant; thus it could be rationally inferred that he was not appellant's roommate. 

 Branscum did not ask for identification but instead returned to his vehicle. So too
did he observe that the address on the check was not that of the location at which he
delivered the pizzas. Consequently, he called the telephone number on the check and
reached C. Michael Gonzalez (the actual account owner) who told Branscum that he did
not order any pizzas. 

 Appellant was charged with forgery with intent to defraud and harm another by
passing a forged writing knowing such writing to be forged. (1) See Tex. Pen. Code Ann.
§32.21(a)(1)(B) and (b) (Vernon Supp. 2006). Before us, he does not challenge the
sufficiency of the evidence to show that he passed a forged writing, but questions whether
the State proved he knew it to be forged. 

 Authority illustrates that from evidence of a defendant making an affirmative, false
statement explaining how he obtained the instrument, a jury can rationally conclude,
beyond all reasonable doubt, that he had knowledge of the instrument's forged nature. 
See Williams v. State, 688 S.W.2d 486, 490 (Tex. Crim. App. 1985); see also Colburn v.
State, 501 S.W.2d 680, 682 (Tex. Crim. App. 1973) (holding that false representations as
to the maker or origin of the check constitute sufficient evidence to prove knowledge the
check is forged); Golden v. State, 475 S.W.2d 273, 274 (Tex. Crim. App. 1971) (holding
that the evidence was sufficient to prove knowledge of its forged nature when the
defendant possessed and passed the forged check and falsely represented that he
obtained it from a specific person). Here, the check appeared to be executed by Michael
Gonzalez of New Meaning Drywall. The maker, according to appellant, was his roommate. 
Yet, the address appearing on the check was not that of the location whereat appellant was
found. Moreover, C. Michael Gonzalez of New Meaning Drywall testified that he did not
know appellant. From this, and the teachings of Williams, Colburn, and Golden, we
conclude that the evidence was sufficient to permit a rational jury to conclude beyond
reasonable doubt that appellant knew the check given Branscum was forged. 

 As to the factual sufficiency of the evidence, none of the police officers investigating
the crime remembered Branscum telling them that appellant had said his roommate wrote
the check. Nevertheless, the credibility of Branscum was for the jury to resolve, and we
find no basis on which to overturn its resolution of that issue. If believed, the evidence was
both legally and factually sufficient to sustain the conviction.

 The judgment of the trial court is affirmed.


 Per Curiam

Do not publish.
1. The State established through its own expert handwriting witness that appellant was not the maker
of the check. 



 therefore, waived). 

 Additionally, the record also discloses that Carla failed to respond to Cire's motion
to compel discovery. Under the local rules adopted and implemented by the trial court, this
permitted the latter to conclude that she did not contest the relief sought in the motion. 
That is, the local rule (approved by the Texas Supreme Court on May 26, 1999), of which
we can take judicial notice, see Gordon v. Ward, 822 S.W.2d 90, 92 (Tex. App.--Houston
[1st Dist.] 1991, writ denied) (taking judicial notice of the same local rules), provided that
the "[f]ailure to file a response [to a motion] may be considered a representation of no
opposition." Harris County Rules of the Civil Trial Division 3.3.2. Thus, in failing to
respond to the motion of Cire, the trial court was authorized to conclude that Carla had no
objection to the relief sought. This is especially so when Carla does not suggest that she
lacked knowledge or notice of the motion. (1) 

 August 3, 1998 Order-- Compelling Answers to Deposition Questions

 Next, Carla believes that the trial court erred in executing its August 3, 1998 order
compelling her to answer various deposition questions. We disagree for the following
reasons.

 First, we again find no response by Carla to Cire's motion requesting that she be
required to answer the deposition questions at issue. And, like her failure to reply to the
motion to compel discussed above, this entitled the trial court to conclude that she did not
oppose the relief sought. Again, this is especially so when Carla does not suggest that
she lacked knowledge or notice of the motion or the date on which it was due to be
submitted to the trial court for disposition.

 Second, the assertions uttered before us by Carla are nothing more than
conclusions without accompanying explanation of law or fact. This circumstance, as
previously mentioned, results in the waiver of her complaints.

 Third, the allegation that the court was obligated to conduct an oral hearing before
granting the motion is incorrect. Again, a trial court need not hold such a hearing prior to
resolving the discovery dispute. Meek v. Bishop, Peterson & Sharp, P.C., supra. 
Furthermore, the sole case she cites as support of her contention, McKinney v. National
Union Fire Ins. Co., 772 S.W.2d 72 (Tex. 1989), does not do so. That case deals with
who had the burden to request a hearing. In resolving the dispute, the Supreme Court
discussed Texas Rule of Civil Procedure 166b(4)(since superceded by Rule 193.4) and
its prior decision of Peeples v. Fourth Court of Appeals, 701 S.W.2d 635 (1985). And, to
the extent that it touched upon the matter of a hearing, it only said that the parties could
present or establish their objections or claims of privilege at the hearing via live witnesses
or affidavits. Yet, it did not say that the court must have a hearing wherein live testimony
could be presented; nor did it foreclose the ability of a trial court to conduct a hearing by
written submission. 

 Indeed, that the litigants could tender affidavits in support of or to defeat a claim and
that such evidence could be appended to the motion to compel or response thereto
connotes that some procedure other than the presentation of live testimony is allowed. In
effect, the option to hold an oral hearing or merely act upon written submissions remains
with the trial court, see Meek v. Bishop, Peterson & Sharp, P.C., supra, and McKinney did
not change that. 

 August 3, 1998 Order -- Compelling Answers to Interrogatories and Production of
Documents


 Carla also complains about another discovery order signed by the trial court on
August 3, 1998. It compelled her to answer various interrogatories propounded by Cire. 
We overrule this issue as well for the following reasons.

 First, to the extent Carla posits that the order was "void" or unenforceable because
it alluded to Cire by a different name and failed to specify "which Plaintiff was to comply,"
she again cites no legal authority. Nor does she provide us with anything other than
conclusions. Thus, these contentions are waived due to insufficient briefing. Tex. R. App.
Proc. 38.1(h); Vasquez v. State, supra. 

 Second, to the extent that she posits that the doctrine of the law of the case
precluded the court from entering the order, nothing of record indicates that a court of last
resort previously had addressed the matter. That is pivotal since the authority she cites
requires as much. Indeed, the panel in Hansen v. Academy Corp., 961 S.W.2d 329, 333
(Tex. App.--Houston [1st Dist.] 1997, pet. denied) interpreted 
the "'law of the case" doctrine
[as] stat[ing] that questions of law decided on appeal to a court of last resort will govern
the case throughout its later stages." Hansen v. Academy Corp., 961 S.W.2d at 333. In
other words, if there has been no prior appeal involving the very issue of discovery
addressed by the trial court in its August 3rd order (which there has not), the doctrine of
law of the case does not apply. 

 Third, to the extent Carla posits that she "fully" answered the interrogatories at issue
before August 3rd, the record discloses that each answer was preceded by an objection
and a statement that she did not intend or desire to waive the objection. So, despite her
alleged answers, the validity of her objections remained a question to be addressed by the
court. Moreover, assuming that Carla had answered the interrogatories before the court
acted on August 3rd, the order in question assessed no sanction. So, we cannot see how
she was harmed by it, and a showing of harm would be a prerequisite to any reversal. 
Tex. R. App. Proc. 44.1.

 Fourth, Carla suggests that the August 3rd order was unenforceable because it
simply referred to the "'court's order of January 5, 1998' and the subpoena duces tecum
served on May 27, 1998' without attaching same." Yet, she cites nothing which holds that
the January 5th order and May subpoena had to be attached to the August order before
the latter could be valid. (2) Nor does she argue that there were other orders issued on
January 5th and other subpoenas duces tecum served on May 27th. Without this, we
cannot accept the proposition that the August 3rd order was unenforceable because it
supposedly "placed [her] on peril of guessing which order of January 5 . . . or . . .
'subpoena duces tecum' . . . the trial court was referring to [sic]." 

 Fifth, so too do we reject the proposition that the order is void because the trial court
could not have held Carla in contempt for violating it. Simply put, the order in question did
not purport to hold her in contempt. 

Sanctions -- Striking the Pleadings


 Through her final points of error, Carla alleges that the trial court erred in issuing
its "Order on Sanctions." Therein, it ordered that "the pleadings of Plaintiff Carla Roberson
are stricken from this lawsuit." This allegedly constituted an abuse of discretion. We
agree.

 Standard of Review

 It is clear that the decision to sanction a litigant for discovery abuse lies within the
discretion of the trial court. Estate of Riggins, 937 S.W.2d 11, 16 (Tex. App.--Amarillo
1996, writ denied). Furthermore, we may not interfere with the decision unless it
constitutes an abuse of discretion. Id. And, whether it does depends upon whether it
comported with controlling rules and principals and, therefore, was not arbitrary and
unreasonable. See Williams v. Akzo Nobel Chemicals, Inc., 999 S.W.2d 836, 844 (Tex.
App.--Tyler 1999, no pet.); Estate of Riggins, 937 S.W.2d at 16. The rules and principals
applicable to addressing claims of discovery abuse follow.

 First, there must be evidence that some discovery abuse occurred. Tjernagel v.
Roberts, 928 S.W.2d 297, 304 (Tex. App.--Amarillo 1996, orig. proceeding). Second, in
issuing the sanction, the trial court is not limited to considering only the specific violation
for which the sanction is finally imposed; everything that has occurred during the litigation
may be weighed. Estate of Riggins, 937 S.W.2d at 16. Third, sanctions serve three
purposes; that is, they serve to 1) punish those violating the rules of discovery, 2) deter
other litigants from similar conduct, and 3) secure compliance with discovery rules. 
Tjernagel v. Roberts, 928 S.W.2d at 303. Fourth, a direct relationship between the
offensive conduct and the sanction imposed must exist. Hamill v. Level, 917 S.W.2d 15,
16 (Tex. 1996); Tjernagel v. Roberts, 928 S.W.2d at 303. Fifth, the sanction imposed must
not be excessive or more severe than necessary to achieve the purposes itemized above. 
Id. That is, the trial court must impose the least onerous sanction available that will fulfill
the purpose underlying the sanction. Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849
(Tex. 1992). So too must it explain why no lesser sanction would be appropriate. Williams
v. Akzo Nobel Chemicals, Inc., 999 S.W.2d at 844. Sixth, only when the party has acted
in flagrant bad faith or his counsel has callously disregarded the responsibilities implicit
in the discovery rules can the trial court consider sanctions which prevent disposition of
the case on the merits; however, even then must lesser measures first be tested or
considered. Chrysler Corp. v. Blackmon, 841 S.W.2d at 849; Tjernagel v. Roberts, 928
S.W.2d at 303. 

 Indeed, the Supreme Court "requires that a lesser sanction actually be assessed"
first before imposition of one which effectively terminates the litigation, unless "it is fully
apparent" that no lesser measure will secure compliance. Williams v. Akzo Nobel
Chemicals, Inc., 999 S.W.2d at 844. Additionally, the conduct involved must be sufficiently
egregious to warrant a presumption that the misfeasant's claims or defenses lack merit. 
Hamill v. Level, 917 S.W.2d at 16. Finally, should the measure actually levied be
excessive, it is unjust, and an unjust sanction illustrates an instance of abused discretion. 
Williams v. Akzo Nobel Chemicals, Inc., 999 S.W.2d at 843. With this said, we turn to the
cause before us.


 Application of Standard

 It is apparent from the record that in striking Carla's pleadings the trial court
effectively disposed of the litigation on grounds other than the actual merits. Simply put,
the measure assessed for the purported discovery abuse was what has become known as
a death penalty sanction for it resulted in her inability to pursue any claim or present any
evidence at trial. Moreover, it was assessed because the trial court concluded that Carla
1) "flagrantly violated" four court orders pertaining to discovery by failing to comply with
them "within the time allowed by the court," 2) hid "her relationship with other attorneys by
refusing to answer deposition questions," 3) used "forged documents to gain an advantage
with the court," and 4) "deliberately destroyed and/or concealed material evidence that
would prove [her] claims" meritless. (3) The evidence withheld, according to the trial court,
illustrated that her claims were meritless. Additionally, her attempts to inhibit discovery of
the tapes and discovery in general were "without any justification" and constituted effort
to "prevent [Cire] from obtaining the true facts and documents that pertain to [her]
allegations in [the] suit." These circumstances also justified "a presumption that her claims
[had] no merit," according to the trial court. 

 Finally, "less stringent sanctions [were] not required because [they] would be
ineffective," the trial court held. This was so because Carla's destruction "and/or"
concealment of the tapes "deprived [Cire] of that objective factual audio evidence." And,
"[m]onetary sanctions [could not] cure [her] wrongdoing, such as destroying and
concealing . . . material evidence found on the . . . tapes." Finally, her failure and that of
her counsel to pay "a small monetary sanction" previously levied by the court "indicate[d]
blatant disregard for the court's order." 

 The foregoing excerpts from the court's order evinces that only once had the court
previously issued sanctions. Furthermore, that sanction consisted of a $250 fine and was
expressly assessed against "plaintiff's attorney," not Carla. Since Carla was not directed
to pay it, one cannot reasonably deduce either that her failure to pay the sum evinced a
blatant disregard for the order or that the assessment of a fine against her would simply
be ignored by her. 

 Nor can it legitimately be said that her purported lack of economic resource to
satisfy a monetary sanction somehow permitted the court to simply levy the death penalty. 
There are more ways to obtain compliance and further the purposes underlying the
assessment of sanctions than merely levying a monetary penalty; holding the party in
contempt was and is one alternative. See GTE Communications Sys. Corp. v. Tanner, 856
S.W.2d 725, 729-30 (Tex. 1993) (noting contempt to be such an alternative); Williams v.
Akzo Nobel Chemicals, Inc., 999 S.W.2d at 844 (describing a myriad of possible
sanctions). Nor does our system of justice countenance the assessment of the death
penalty merely because a litigant lacks money to pay a fine. To hold otherwise would be
to say that only those of greater economic worth may reap the benefit of our Supreme
Court's directive to levy the least onerous, yet suitable, sanction. (4) In short, the de
minimus economic status of a litigant potentially abusing discovery simply requires the trial
court to invoke its imagination to derive other means to regulate and punish inappropriate
behavior.

 Next, and assuming arguendo that Carla intentionally destroyed, hid, or lost
evidence favorable to Cire (i.e. the audio tapes), sanctions other than the death penalty
exist to address the situation. Indeed, while dismissing the claims of a litigant destroying
evidence may be appropriate at times, the Supreme Court noted the existence of other
measures. Trevino v. Ortega, 969 S.W.2d 950, 953 (Tex. 1998) (involving the spoliation
of evidence). These alternative remedies, according to the court, may include an
instruction to the jury directing it to presume that the missing evidence would be
unfavorable to the party failing to produce it, i.e., Carla. Id.; see Watson v. Brazos Elec.
Power Coop., 918 S.W.2d 639, 643 (Tex. App.-Waco 1996, writ denied) (describing the
appropriate instruction). Yet, other than suggesting that Carla would ignore a monetary
sanction (a supposition that we previously illustrated to be insupportable), the trial court
did not indicate that it considered any alternative to simply striking the pleadings as a
result of Carla's alleged spoliation or secretion of the tapes. Nor did it discuss why such
a lesser measure would not suffice as an appropriate sanction. This it was obligated to
do under GTE Communications Sys. Corp. (5) 

 In sum by simply ordering that Carla's pleadings be struck, the trial court failed to
comport with Texas Supreme Court precedent. This does not mean that we condone the
antics of Carla and her counsel. Their conduct may well deserve sanction, including the
dismissal of the cause. We simply hold that before the death penalty sanction can be
levied, the trial court must comply with GTE Communications Sys. Corp. and properly
illustrate why lesser sanctions would not suffice. It did not do that here. 

 Accordingly, the order striking the pleadings of Carla and the final judgment entered
against her are reversed. The cause is remanded to the trial court.


 Brian Quinn

 Justice


Publish.
1. Furthermore, doing nothing in the face of a pending motion then complaining on appeal runs afoul
of the policy underlying Appellate Rule 33.1. The trial court should have first opportunity to resolve the
dispute upon considering all the pertinent argument. In withholding argument from the court, that goal is
impeded. Thus, the conduct of the party results and should result in waiver.
2. Her general citation to Ex parte Herrera, 820 S.W.2d 54 (Tex. App.--Houston [14th Dist.] 1991, orig.
proceeding) is of no moment. It had nothing to do with the circumstances like those at bar. Rather, the court
in Herrera merely addressed 1) whether the commitment order was void because there had been no prior
order or judgment of contempt executed and 2) whether one can be held in contempt for an act that does
not violate any prior order. 
3. The evidence hidden or destroyed consisted of audio tapes of conversations between Carla and
the attorneys she sued, i.e. Cire.
4. We do not comment upon whether Carla had or has monetary funds sufficient to pay any fine or
sanction. Indeed, the record illustrates that she was a beneficiary of a rather large monetary settlement in
a related suit. We simply address the trial court's insinuation that her lack of finances somehow warrants
imposition of death penalty sanctions.
5. Nor can we construe the issuance of prior orders to compel as attempt to impose lesser sanctions. 
Williams v. Akzo Nobel Chemicals, Inc., 999 S.W.2d 836, 844 (Tex. App.-Tyler 1999, no pet.).