# NO. 12-07-00243-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST* | § | *APPEAL FROM THE 321ST* |
| *OF A.T.M.,* | § | *JUDICIAL DISTRICT COURT OF* |
| *A CHILD* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joseph M. appeals the trial court's final judgment in a suit to modify a prior conservatorship and possession order. Joseph raises nine issues on appeal. We dismiss in part and affirm in part.

## BACKGROUND

Joseph filed a petition to modify a prior conservatorship and possession order. This was the third such modification sought by Joseph since his divorce from his former wife, Jane. During the course of the proceedings, Jane filed a motion for interim attorney's fees. The trial court granted Jane's motion and ordered that Joseph pay Jane $20,000 for such fees. Joseph moved that the trial court disqualify Jane's attorney from representing her in the suit. The trial court denied Joseph's motion. Eventually, at Jane's request, the trial court rendered a final judgment sanctioning Joseph by striking his pleadings and ordering that he pay Jane $10,000 in attorney's fees. This appeal followed.

## ATTORNEY'S FEES SANCTION

In his ninth issue, Joseph challenges the trial court's sanction of $10,000 in attorney's fees.[1]

**Standard of Review**

Trial courts have the inherent power to sanction to the extent necessary to deter, alleviate, and

---

[1] Joseph's ninth issue is contained in his brief as part of his seventh issue. Because the remainder of his seventh issue relates to another sanction, we have renumbered the attorney's fees component of the seventh issue.

counteract bad faith abuse of the judicial process. *Williams v. Akzo Nobel Chems., Inc.*, 999 S.W.2d 836, 843 (Tex. App.–Tyler 1999, no pet.). For inherent power to apply, there must be some evidence and factual findings that the conduct complained of significantly interfered with the court's administration of its core functions: hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, entering final judgment, and enforcing that judgment. *Id.* Under its inherent power, the trial court may require a party to pay attorney's fees or order other monetary sanctions such as heavy fines. *Id.* at 844.

We review a trial court's imposition of sanctions under an abuse of discretion standard of review. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Spitzer v. Berry*, 247 S.W.3d 747, 750 (Tex. App.–Tyler 2008, pet. denied).

In determining whether a trial court abused its discretion in ordering sanctions, an appellate court must ensure that the ordered sanctions were appropriate and just. *Am. Flood Research*, 192 S.W.3d at 583. Appellate courts must conduct a two-part inquiry in making this determination. *Id.* First, the appellate court must ensure that there is a direct relationship between the improper conduct and the sanction imposed; in other words, the court should examine whether punishment was imposed upon the true offender and tailored to remedy any prejudice caused. *Id.* Second, the appellate court must make certain that less severe sanctions would not have been sufficient to promote compliance. *Id.*

**Discussion**

The $10,000 in attorney's fees was a sanction imposed in addition to striking Joseph's pleadings. Throughout the course of the proceedings in the trial court, Jane had asserted to the trial

court that she did not oppose modifications similar to those sought by Joseph in his petition. Jane alleged that Joseph was attempting to use the modification proceeding to force her to enter into a settlement in a bankruptcy matter pending before another court. Jane also alleged that Joseph was attempting to lengthen the course of the modification proceeding in order to cause her to either settle the bankruptcy matter or incur additional attorney's fees.

Jane's attorney testified before the trial court that he had sought settlement with Joseph. Counsel testified that, despite Jane's willingness to settle the case in a manner favorable to Joseph, Joseph was attempting to lengthen the time and expense of the proceedings to force Jane to settle in a bankruptcy proceeding pending before another court. Counsel also testified that Joseph's attorney had informed counsel in writing that Joseph sought a settlement which included a resolution of bankruptcy matters. The trial court specifically found in writing that "one motive or intent of [Joseph] is to tie custody of the child to bankruptcy proceedings in conjunction with peripheral matters dealing with the bankruptcy of [Joseph.]"

In seeking this additional sanction from the trial court, Jane asserted that striking Joseph's pleadings was not sufficient to deter him from simply filing a new modification petition and engaging in the same conduct. Therefore, Jane sought attorney's fees for all of her attorney's work in the suit. She asserted that Joseph needed to be forced to compensate her for her legal expenses in order to deter Joseph from future bad conduct. As support for her fees request, Jane's attorney testified and provided a billing statement reflecting attorney's fees in the amount of $10,487 for the case. *See Low v. Henry*, 221 S.W.3d 609, 621 (Tex. 2007) (The assessment of monetary sanctions under chapter 10 of the Civil Practice and Remedies Code should "begin with an acknowledgment of the costs and fees incurred because of the sanctionable conduct."). This evidence provided "a monetary guidepost of the impact of the conduct on the party seeking sanctions and the burdens on the court system." *See id.* The trial court awarded attorney's fees of $10,000.

The record contains evidence supporting the proposition that Joseph unduly delayed the resolution of his modification petition as a tactic to force a settlement in an unrelated case. Such delay is clearly inappropriate in matters involving conservatorship and possession and significantly interferes with a trial court's administration of its core functions in a case of this type. *See Williams*, 999 S.W.2d at 843. Therefore, this conduct constitutes bad faith abuse of the judicial process. *See id.*

The record shows that Jane incurred attorney's fees as a result of Joseph's conduct. The trial court had the authority to order the full amount of Jane's attorney's fees where necessary to prevent further egregious conduct of this type. Further, the trial court ordered the attorney's fees sanction in response to Jane's argument that it was necessary to prevent such conduct in the future, an argument based upon the premise that Joseph's conduct was inappropriate and demonstrated his willingness to abuse the judicial process. The record is sufficient to ensure that there is a direct relationship between the improper conduct and the sanction imposed and that less severe sanctions would not have been sufficient to promote compliance. *See Am. Flood Research*, 192 S.W.3d at 583; *see also Low*, 211 S.W.3d at 620 n.5 (nonexclusive list of factors potentially relevant to a trial court's sanction). Therefore, we hold that the trial court did not abuse its discretion by ordering the sanction. We overrule Appellant's ninth issue.[2]

## DISQUALIFICATION OF COUNSEL

In his second issue, Joseph asserts that the trial court erred by refusing to grant his motion for disqualification of opposing counsel. Joseph complains that the trial court should have ruled that Jane's counsel was disqualified for continuing to represent her in the lawsuit. In support for his position, Joseph alleges that counsel had become a witness in the case and that counsel had established an attorney-client relationship with an adverse party.[3] In response, Jane argues that this issue is barred from review because this court has "already ruled on this point" in a previous original proceeding brought by Joseph. *See In re Martel*, No. 12-06-00397-CV, 2007 WL 43616 (Tex. App.–Tyler Jan. 8, 2007, orig. proceeding) (mem. op.). We will, therefore, analyze this issue in the context of the "law of the case" doctrine.

---

[2] Joseph states in his brief that "the determination of reasonable and necessary attorney fees was usurped by the trial court as at final trial attorney fees should have been a pattern jury issue as a jury demand was made, ironically by Appellee, but relied upon by Appellant." Joseph also states, "Furthermore, as if to add insult to injury, for any attorney to 'get away' with a $10,000 fee award 'as an additional sanction' under all the circumstances herein described, tends to resurrect negative stereotypes of 'lawyers' and the profession." To the extent that Joseph intended these statements to constitute appellate issues, he has either failed to provide citation to the record or authority or failed to provide substantive argument. Therefore, Joseph has failed to present these complaints for appellate review. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 567 n.6 (Tex. App.–Tyler 2007, pet. denied).

[3] To the extent that Joseph presents additional grounds in support of this issue, these grounds were never asserted in the trial court in support of Joseph's motion for disqualification. Therefore, Joseph has not preserved these grounds for appellate review. *See* TEX. R. APP. P. 33.1.

The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). "The doctrine is based on public policy and is aimed at putting an end to litigation." *Id.* By narrowing the issues in successive stages of the litigation, the "law of the case" doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. *Id.* Where a losing party fails to avail itself of an appeal in the court of last resort, the issues decided by the court of appeals will generally be regarded as the law of the case in subsequent appeals. *See City of Houston v. Precast Structures, Inc.*, 60 S.W.3d 331, 338 (Tex. App.–Houston [14th Dist.] 2001, pet. denied); *Lee v. Lee*, 44 S.W.3d 151, 154 (Tex. App.–Houston [1st Dist.] 2001, pet. denied). Where we resolve an issue on its merits in a mandamus proceeding, our resolution may, where otherwise appropriate, be applied as law of the case in further proceedings. *Cf. Perry Homes v. Cull*, 258 S.W.3d 580, 586 (Tex. 2008), *cert. denied*, 129 S. Ct. 952 (2009); *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007) (per curiam).

Application of the "law of the case" doctrine lies within the discretion of the court of appeals, depending on the particular circumstances surrounding that case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). Where the appellate court's original decision is clearly erroneous, that court is not required to adhere to its original rulings. *Id.* The doctrine applies only to questions of law and does not apply to questions of fact. *Hudson*, 711 S.W.2d at 630. Further, the doctrine does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those presented before. *Id.*

Joseph previously sought mandamus relief in this court from the trial court's refusal to disqualify Jane's counsel. *Martel*, 2007 WL 43616, at *1-3. We denied relief, holding that the trial court did not abuse its discretion in refusing to disqualify counsel. *Id.*, at *3. This holding resolved a question of law as to whether an abuse of discretion had occurred. *See Lee*, 44 S.W.3d at 153 n.5 (reaching a similar conclusion regarding a legal sufficiency holding). The abuse of discretion standard of review is the standard of review that we would apply in this direct appeal. *See Metro. Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex. 1994) (conducting an abuse of discretion review). And the issues and facts presented previously were "substantially the same" as those before us here. *See Hudson*, 711 S.W.2d at 630; *see also Martel*, 2007 WL 43616, at *1-3. Finally, our previous

decision to deny mandamus relief is not "clearly erroneous." *See **Briscoe***, 102 S.W.3d at 716; *see also **Martel***, 2007 WL 43616, at \*1-3. Therefore, our previous holding is the law of the case. *See **City of Houston***, 60 S.W.3d at 338; ***Lee***, 44 S.W.3d at 154.

Joseph could have refrained from filing a mandamus proceeding and waited to address his issue on direct appeal. He chose to bring a mandamus proceeding, which was denied because the trial court did not abuse its discretion. Accordingly, we overrule Joseph's second issue as governed by the law of the case.

## RECUSAL OF THE TRIAL JUDGE

In his eighth issue, Joseph asserts that

> [t]he honorable judge presiding should have recused herself sua sponte prior to the final hearing as required by TEX. R. CIV. P. 18b(2)(a) and (b); and/or should otherwise be recused . . . on any reversal and remand for new trial as, then as now, . . . her impartiality might reasonably be questioned, and she has a demonstrable personal bias or prejudice concerning Appellant.

Jane asserts that Joseph has waived his right to raise this issue on appeal because he failed to raise this issue by written motion before the trial court. We agree.[4]

Texas Rule of Civil Procedure 18b provides the circumstances under which a judge should be recused. *See **Gill v. Tex. Dep't of Criminal Justice, Institutional Div.***, 3 S.W.3d 576, 579 n.3 (Tex. App.–Houston [1st Dist.] 1999, no pet.); *see also* TEX. R. CIV. P. 18b. Rule 18a sets forth the procedural requirements for the recusal or disqualification of a judge. *See **Barron v. Attorney Gen.***, 108 S.W.3d 379, 382 (Tex. App.–Tyler 2003, no pet.); ***Gill***, 3 S.W.3d at 579 n.2; *see also* TEX. R. CIV. P. 18a. If a party does not comply with the mandatory requirements of Rule 18a, he waives his right to complain of a judge's refusal to recuse herself. ***Barron***, 108 S.W.3d at 382; *see **Gill***, 3 S.W.3d at 579. These requirements include that the party file a timely, written, and verified motion to recuse. *See* TEX. R. CIV. P. 18a; *see also **Barron***, 108 S.W.3d at 382-83; ***Gill***, 3 S.W.3d at 579. Therefore,

---

[4] Joseph also stated in his issue statement for issue eight that the trial judge should be disqualified from presiding over any proceedings on remand. However, in his brief, Joseph provides substantive argument relating to the issue of recusal, but not disqualification. Therefore, Joseph has failed to present the issue of disqualification for appellate review. *See **Canal Ins.***, 238 S.W.3d at 567 n.6.

absent a timely, written, and verified motion to recuse, a party fails to preserve any issue for appeal. ***Barron***, 108 S.W.3d at 383; *see **Gill***, 3 S.W.3d at 579. *But see **Barron***, 108 S.W.3d at 383 n.4 (noting a possible exception regarding timeliness).

Here, Joseph never filed a written recusal motion in the trial court. Therefore, he has failed to preserve this issue for appellate review. *See **Barron***, 108 S.W.3d at 382-83; ***Gill***, 3 S.W.3d at 579. We overrule Joseph's eighth issue.

## MOOT ISSUES

In Joseph's first, third, fourth, fifth, sixth, and seventh issues, he asserts that the trial court improperly ordered interim attorney's fees, ordered amicus attorney's fees, and struck his pleadings. Jane argues that these issues are moot.

### Standard of Review

Appellate courts are prohibited from deciding moot controversies. ***Nat'l Collegiate Athletic Ass'n v. Jones***, 1 S.W.3d 83, 86 (Tex. 1999). This prohibition is rooted in the separation of powers doctrine in the Texas and United States constitutions that prohibits courts from rendering advisory opinions. ***Id.*** Once a case or claim is determined to be moot, the only proper judgment is dismissal. ***Kolsti v. Guest***, 576 S.W.2d 892, 894 (Tex. Civ. App.–Tyler 1979, no writ); *see **Black v. Jackson***, 82 S.W.3d 44, 51-52 (Tex. App.–Tyler 2002, no pet.) (courts lack subject matter jurisdiction to decide moot issues). A case or claim becomes moot if at any stage there ceases to be an actual controversy between the parties. ***Nat'l Collegiate Athletic Ass'n***, 1 S.W.3d at 86. The same is true if a court's judgment cannot have any practical legal effect upon a then existing controversy. ***Kolsti***, 576 S.W.2d at 893.

### Discussion

Because mootness is a question of jurisdiction, we cannot reach the merits of Joseph's issues until we have addressed Jane's assertion that Joseph's issues are moot.

#### First Issue

In Joseph's first issue, he asserts that the trial court "violated the Best Interest of the Child Doctrine as its case management, its rulings and/or final order did not serve the child and/or his best interests. . . ." More specifically, Joseph complains that the trial court failed to consider the best

7

interests of the child when deciding to strike Joseph's pleadings. Additionally, Joseph complains that the trial court reversibly erred by holding a final hearing despite the recognized absence of the amicus attorney.[5]

It is undisputed that, since filing his notice of appeal, Joseph has filed a new petition to modify conservatorship and possession. It is also undisputed that all of the issues concerning the conservatorship and possession presented in the case before us are currently before the trial court in the new proceeding. Thus, if we reversed and remanded this case for a trial on the merits, there would be two actions before the same trial court seeking the same relief. Therefore, the relief we could potentially grant would afford Joseph no rights he does not already enjoy. Consequently, Joseph's first issue is moot. *See Kolsti*, 576 S.W.2d at 893; *see also Oshman v. Hubler*, 730 S.W.2d 6, 7 (Tex. App.–Corpus Christi 1987, writ ref'd n.r.e.) (appellate issues rendered moot by subsequent proceedings between the parties).

### *Fifth, Sixth, and Seventh Issues*

In his fifth issue, Joseph argues that the trial court reversibly erred by striking his pleadings without an adequate legal reason to do so. In his sixth issue, Joseph complains that, by striking his pleadings, the trial court deprived him and his son of their right to a jury trial on "the jury issues" of conservatorship and "the opportunity to relocate to the Austin area."[6] In his seventh issue, Joseph challenges the evidentiary sufficiency of the trial court's findings in support of its decision to strike Joseph's pleadings. He also argues in this issue that the trial court misapplied the law to these findings when reaching its decision. For the reasons set forth in our discussion relating to Joseph's first issue, his fifth, sixth, and seventh issues are also moot. *See Kolsti*, 576 S.W.2d at 893; *see also Oshman*, 730 S.W.2d at 7.

### *Third Issue*

In his third issue, Joseph alleges that the trial court reversibly erred by rendering a temporary order that Joseph pay Jane $20,000 in interim attorney's fees. Jane sought such interim fees based on

---

[5] To the extent that Joseph may have intended to raise additional complaints in his first issue, he has either failed to provide citation to the record or authority or failed to provide substantive argument. Therefore, he has failed to present these complaints for appellate review. *See Canal Ins.*, 238 S.W.3d at 567 n.6.

[6] Joseph also states in this issue that he and his son were deprived of their right to a trial on "the reasonableness and necessity of attorney fees." It is impossible to discern what "attorney fees" Joseph is referring to in this issue. In addition, Joseph has failed to provide citation to authority and substantive argument regarding this complaint. Therefore, Joseph has failed to present this complaint for appellate review. *See Canal Ins.*, 238 S.W.3d at 567 n.6.

the allegation that she could not afford to pay her attorney for continued representation though trial. It is undisputed that Joseph never paid Jane these funds. *See* TEX. R. APP. P. 38.1(g) (formerly TEX. R. APP. P. 38.1(f)).

In general, temporary orders of a trial court issued during the pendency of a proceeding are superseded by the trial court's final order. *See, e.g., **Rafferty v. Finstad***, 903 S.W.2d 374, 378 (Tex. App.–Houston [1st Dist.] 1995, writ denied); ***Perry Bros., Inc. v. Perry***, 734 S.W.2d 211, 211-12 (Tex. App.–Dallas 1987, no writ). Here, the trial court's final judgment omitted any mention of the interim attorney's fees and contained a provision denying all relief not expressly granted. Thus, the temporary order was superseded by the trial court's final judgment. *See **In re Thomason***, No. 09-98-462-CV, 1999 WL 130130, at *2 (Tex. App.–Beaumont Mar. 11, 1999, orig. proceeding) (not designated for publication) (reaching a similar conclusion). Because Joseph is no longer subject to the trial court's temporary order, any action we might take to affirm or reverse that order would have no effect. Therefore, Joseph's third issue is moot. *See **In re K.L.R.***, 162 S.W.3d 291, 301 (Tex. App.–Tyler 2005, no pet.) (temporary order moot because final judgment rendered); ***Kolsti***, 576 S.W.2d at 893 (issue moot if court's judgment would be of no effect).

*Fourth Issue*

In his fourth issue, Joseph argues that "the trial court erred in awarding $10,000 in amicus fees to be paid at [his] sole expense, without giving due consideration to [Jane's] ability to share said cost" and that "the award was otherwise punitively excessive." According to Joseph's brief, he "willingly paid $2,000 of the ordered $10,000 to engage the amicus [attorney] believing that the trial court, in later considering the matter, would order [Jane] to share by funding the next $2,000 installment[,] assuming the second cost increment was incurred." Joseph did not pay the remainder of the ordered fees, and these remaining fees were not incorporated into the trial court's final judgment.

Joseph does not assert that the trial court should not have appointed an amicus attorney in this case or that the original $2,000 paid by Joseph was excessive. Nor does Joseph assert that the trial court erred by requiring him to pay this initial $2,000. Instead, Joseph's appellate issue is that the trial court erred by failing to require Jane to pay some of the fees following this initial payment. Like his third issue, Joseph's fourth issue is moot because Joseph is no longer subject to the trial court's amicus fees order in relation to the remaining $8,000. *See **K.L.R.***, 162 S.W.3d at 301; ***Kolsti***, 576 S.W.2d at 893; *see also **Thomason***, 1999 WL 130130, at *2.

9

*Joseph's Arguments*

In his reply brief, Joseph argues that the above issues are not moot. First, Joseph argues that

> both [his] and [his son's] constitutional rights can only be guaranteed by [Joseph] being afforded [t]he opportunity to obtain a new jury trial on the merits[,] which was unconstitutionally denied. Otherwise, all of [the] evidence that now survives on appeal would be irretrievably barred by judicial estoppel, and/or res judicata, and therefore would be of no avail in any subsequent modification.

However, judicial estoppel and res judicata relate to the types of issues and arguments that may be brought; they do not relate to the admissibility of evidence offered in support of allowable issues and arguments. *Cf. Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008), *cert. denied*, 129 S. Ct. 1003 (2009) (judicial estoppel); *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008) (res judicata). We cannot discern from the record how any otherwise admissible evidence would be "irretrievably barred by judicial estoppel, and/or res judicata."

Joseph also argues that his issues are not moot because holding such "would significantly 'reward' those who intentionally frustrate the rule of law, and only serve to justify their acting with impunity." Joseph provides no authority for, or elaboration of, this position. In light of our previous mootness analysis, we cannot discern from the record why this argument prevents Joseph's issues from becoming moot.

Joseph argues that his issues are not moot because his opportunity to "overturn[] the findings of the trial court, which have no basis in fact or law" "only surviv[es] now by virtue of this appeal. . . ." Joseph provides no authority for, or elaboration of, this position. To the extent that it was necessary to review these findings in order to dispose of Joseph's appeal, we have already done so when addressing Joseph's other issues. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Therefore, this argument does not preclude mootness.

Finally, Joseph asserts that his issues are not moot because this appeal presents the only opportunity to exercise his right to "[r]eimbursement of some or all of [his] trial level attorney fees and costs" and his appellate costs. We note that Joseph has, yet again, failed to provide authority for, or elaboration of, this position. Further, to the extent necessary, we have considered the issue of trial level attorney's fees in one of Joseph's previous issues. Beyond that matter, Joseph has not presented an

10

appellate issue regarding the trial court's apportionment of fees and costs. As to the issue of appellate costs, it is axiomatic that our forthcoming judgment as to appellate costs cannot operate to prevent mootness of an issue.[7]

**Conclusion**

For the reasons set forth above, we hold that Joseph's first, third, fourth, fifth, sixth, and seventh issues are moot.

**DISPOSITION**

We *dismiss* Joseph's first, third, fourth, fifth, sixth, and seventh issues as moot. In all other respects, we *affirm* the judgment of the trial court. We *overrule* as moot any motions or objections still pending in this appeal.

   BRIAN HOYLE   
Justice

Opinion delivered May 29, 2009.
*Panel consisted of Worthen, C.J., and Hoyle, J.*
*Griffith, J., not participating.*

(PUBLISH)

---

[7] To the extent Joseph has made any other arguments against mootness, those arguments have already been addressed in our opinion or we have addressed the underlying issue, as one that is not moot, elsewhere in our opinion.