Dollie Weir appeals from the trial court’s order granting Leonard
Allen’s motion for summary judgment, and admitting to probate as a muniment of
title thirteen writings purported to be a codicil to their mother’s will









NO. 12-08-00253-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

IN THE INTEREST OF                                           §                      APPEAL
FROM THE 321ST

 

C.G.C. AND Z.K.C.,                                      §                      JUDICIAL
DISTRICT COURT 

 

CHILDREN                                                   §                      SMITH
COUNTY, TEXAS







            MEMORANDUM
OPINION

Julie
Suzanne Carnes appeals from the trial court’s final order in a suit affecting
the parent-child relationship and divorce action.  On appeal, Julie presents four
issues.  We reverse and remand.

 

Background

            On
February 23, 2007, Donna Jean Braly and Robert R. Carnes filed a first amended
original petition in a suit affecting the parent-child relationship and a
request for temporary orders. The petition stated that Donna and Robert are the
paternal grandparents of C.G.C. and Z.K.C., minor children, and requested that they
be appointed managing conservators of the minor children.  According to the
petition, an order was necessary because the minor children’s present
environment presented a serious question concerning their physical health or
welfare.  Donna and Robert also requested that the parents of the children,
Julie Suzanne Carnes and Walter Lee Carnes, be ordered to undergo drug
testing.  Attached to the petition was an affidavit by Donna, stating that the
children had been staying with her since January 2007 at the direction of Child
Protective Services, that she “believe[d]” Julie and Walter had used drugs in
the recent past, and that, recently, a Smith County Sheriff’s deputy went to
Julie and Walter’s home and found drug residue.  Donna stated that her son was
“satisfied” with placing the children with her, but that Julie had threatened
to run away with the children.  Further, she asserted that returning the minor
children to Julie’s home would be injurious to their physical and emotional
health.

On
February 28, 2007, the parents, Julie and Walter, agreed to temporary orders
appointing Donna and Robert as temporary joint managing conservators of the
minor children. The trial court signed temporary orders, finding that the
material allegations in Donna and Robert’s petition were true and that these
orders were in the best interest of the children.  The trial court appointed
Donna and Robert temporary joint managing conservators of C.G.C. and Z.K.C.,
with Donna having the exclusive right to designate the primary residence of the
children. Julie and Walter were allowed supervised visitation on alternate
weekends and were ordered to pay support to Donna.  On March 2, 2007, the trial
court filed a scheduling order, ordering a full day of mediation.

On
March 20, 2007, Julie filed a cross petition for divorce against Walter, requesting
that she be appointed sole managing conservator of C.G.C. and Z.K.C., and that
she be awarded a disproportionate share of the marital estate.  Walter filed a
pro se response, asking that the children continue to live with Donna, that
Julie receive only supervised visitation, and that they both pay child support
to Donna.  On June 15, Donna and Robert filed a motion to compel mediation
because their attorney and Julie’s attorney could not agree on a mediator or a
date for mediation.  At a hearing on the motion, Donna and Robert’s attorney
stated that Julie’s attorney did not agree to any of the mediators he
suggested. Julie’s attorney stated that Julie did not have a “lot of money,” so
he had been attempting to find a mediator “who won’t charge so much.” Counsel for
both parties agreed on a mediator during the hearing.  Further, the trial court
ordered that Julie’s substance abuse problem be evaluated by Dwayne M. Cox, a
licensed chemical dependency counselor.  On September 26, 2007, Cox filed a
chemical dependency assessment of Julie. 

On
January 29, 2008, the trial court filed a new scheduling order, stating that
the pretrial conference would be held on March 19, 2008, and that the final
trial would be held on March 25, 2008.  On March 12, 2008, Julie’s attorney cancelled
the mediation scheduled for March 17, stating that Julie was indigent and could
not afford to pay for it.  On the same day, Donna and Robert filed a motion to
strike Julie’s pleadings, stating as grounds that Julie violated the pretrial
orders by unilaterally cancelling mediation.  On March 18, Julie filed a motion
to waive mediation, asserting that she was unable to pay for the costs of
mediation and attaching an affidavit of indigency to the motion. 

At
the pretrial hearing on March 19, the trial court declined to waive mediation, and
the following exchange occurred between the trial court, Julie’s attorney, and
Donna and Robert’s attorney:

 

JULIE’S ATTORNEY:  Judge, my client can’t afford the
mediation.

 

TRIAL COURT:  I’m sorry.

 

JULIE’S ATTORNEY:  She doesn’t have the money.

 

TRIAL COURT:  Are you fighting over custody?

 

. . . . 

 

JULIE’S ATTORNEY:  Yes, Your Honor.

 

TRIAL COURT:  Okay.  Then there will be no trials without
mediation.

 

. . . .

 

JULIE’S ATTORNEY:  She owes me $3,000 now.

 

. . . . 

 

JULIE’S ATTORNEY:  Judge, I don’t want my client to be
prejudiced because I’m helping her for nothing.

 

TRIAL COURT:  Well, I’m sorry, but you got to go to
mediation.

 

JULIE’S ATTORNEY:  She can’t --

 

DONNA AND ROBERT ’S ATTORNEY:  Assuming we –

 

JULIE’S ATTORNEY: -- afford it.

 

. . . . 

 

TRIAL COURT:  Well, then go back in that room and
settle it.

 

. . . . 

 

TRIAL COURT:  How did y’all do?

 

JULIE’S ATTORNEY:  We want to go to settlement week.

 

TRIAL COURT:  Well, it won’t be until September.

 

. . . . 

 

JULIE’S ATTORNEY:  Is there some other program
comparable to that?

 

TRIAL COURT: No. . . . I sent y’all in July to [a
mediator], and nobody told me there was no money.

 

. . . . 

 

JULIE’S ATTORNEY:  The reason we didn’t go in July is
because my client didn’t have the money.

 

TRIAL COURT:  Well, you didn’t tell me. 

 

JULIE’S ATTORNEY:  Yes, I did.

 

TRIAL COURT:  You did not file anything that said you
couldn’t afford it.

 

JULIE’S ATTORNEY:  I didn’t file anything, but I stood
right here and told you she needed some time to raise the money for the
mediation.

 

TRIAL COURT:  All right.  . . .  You have to file
something.  You could have gone to settlement week. Y’all didn’t go.

 

JULIE’S ATTORNEY:  I didn’t even –

 

TRIAL COURT:  I’ll strike your pleadings.

 

JULIE’S ATTORNEY:  --know about settlement week.

 

 

On March 20, the
trial court found that Julie failed to comply with a prior order of the court
to participate in mediation, ordered that Julie’s affirmative pleadings on file
be stricken, and ordered that Julie not be permitted to call witnesses or put
on evidence in the case.

At
the final hearing on March 25, 2008, the trial court reiterated that, until the
pretrial hearing, no one complained about mediation or costs of mediation or
asked to change mediators. Julie’s attorney stated that he had informed the
trial court about his client’s lack of money to pay for mediation on at least two
prior occasions. Further, he asserted that the trial court was allowing Donna
and Robert to use their money to violate Julie’s civil rights.  However, the
trial court refused to continue the case on the date of trial or vacate its
order striking Julie’s pleadings.  After the final hearing, Julie made a bill
of exception, testifying that she attempted to borrow money to pay for
mediation, but could not do so.  She stated that she did not have any property
to mortgage to raise the money and that she owed more money on her car than it was
worth.

On
March 31, 2008, the trial court filed a final order in the case, granting the
divorce, and dividing the personal property and debts between the parties.  The
trial court ordered that 

 

1.     
Donna, Robert, Julie, and Walter be appointed joint managing
conservators of C.G.C. and Z.K.C., with Donna having the exclusive right to
designate the primary residence of the children without regard to geographic
location. 

 

2.     
The standard possession order should not apply in this case.

 

3.     
Julie has increasing visitation with the minor children according to the
visitation schedule attached to the order, leading to standard visitation as a possessory
conservator effective June 1, 2008. 

 

4.     
Walter has possession of the children at Kids Connection. 

 

5.     
Both parents pay child support and, as additional child support, cash
medical support to Donna. 

 

 

In its findings
of fact and conclusions of law, the trial court stated that 

 

 

1.     
The parties dictated an agreement regarding the temporary orders into
the record. 

 

2.     
Pursuant to the parties’ agreement, the parents of the minor children
will have supervised visitation because of their history of drug use.

 

3.     
The court signed an order striking Julie’s pleadings for her failure to
attend mediation and participate in an evaluation by Cox. 

 

4.     
“Due to the fact that [Julie] never went back to [Cox] as previously
ordered by the court for a drug evaluation and did not attend mediation,” the
court struck her pleadings.

 

 

This
appeal followed.

 

Standing

As
part of her second issue, Julie contends that Donna and Robert lacked standing
to initiate a suit affecting the parent-child relationship.

Applicable
Law

            Standing
is a constitutional prerequisite to maintaining a suit under Texas law.  Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).
 Standing, as a component of subject matter jurisdiction, cannot be waived and
may be raised for the first time on appeal by the parties or the court.  Id.
at 445-46.  When standing is challenged for the first time on appeal, appellate
courts “must construe the petition in favor of the party, and if necessary,
review the entire record to determine if any evidence supports standing.”  Id.
at 446.  We review a challenge to a party’s standing de novo.  Tex. Dep’t
of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 646 (Tex. 2004).  A
grandparent may file an original suit requesting managing conservatorship if
there is satisfactory proof to the court that the order requested is necessary
because the child’s present circumstances would significantly impair the
child’s physical health or emotional development, or both parents, the
surviving parent, or the managing conservator or custodian either filed the
petition or consented to the suit.  Tex.
Fam. Code Ann. § 102.004(a) (Vernon Supp. 2009). 

The
standard for determining whether the grandparent’s proof is satisfactory is a
preponderance of the evidence.  Von Behren v. Von Behren, 800
S.W.2d 919, 921 (Tex. App.–San Antonio 1990, writ denied).  Further, section
102.004 does not specify when the consent must be given or whether the consent
must be in writing.  In re A.M.S., 277 S.W.3d 92, 98 (Tex. App.–Texarkana
2009, no pet.).  Oral consent, given by the proper party and established in the
record, is sufficient to grant standing under section 102.004 even if consent
is given after the filing of the petition.  Id. 

Analysis

            We
must determine whether the grandparents, Donna and Robert, had standing to
bring an original suit.  See Tex.
Fam. Code Ann. § 102.004(a).  First, we review whether there was
satisfactory proof by a preponderance of the evidence that the minor children’s
present circumstances would significantly impair their physical health or
emotional development.  See id.; Von Behren, 800
S.W.2d at 921.  We construe the petition in favor of the grandparents, Donna
and Robert, and review the entire record to determine if any evidence supports
standing.  See Tex. Ass’n of Bus., 852 S.W.2d at 446.  In its
temporary orders, the trial court found that the material allegations in the
petition were true and that the orders were in the best interest of the
children.  Further, in its findings of fact and conclusions of law, the trial
court found that the parents of the minor children had supervised visitation
because of their history of drug use.  Donna’s affidavit asserted that the
children had been staying with her since January 2007 at the direction of Child
Protective Services, that she “believe[d]” Julie and Walter had used drugs in
the recent past, and that, recently, a Smith County Sheriff’s deputy went to
Julie and Walter’s home and found drug residue.  Donna stated that her son was
“satisfied” with placing the children with her, but that Julie had threatened
to run away with the children. Further, she asserted that returning the minor
children to Julie’s home would be injurious to their physical and emotional
health. 

Julie’s
chemical dependency assessment filed by Cox stated that she admitted using
methamphetamines in a “binge fashion” that progressively worsened until
December 2006.  Both parents consented to drug testing and admitted attending
drug after-care programs.  From this evidence, the trial court could have
determined that both parents used drugs in the recent past, had a history of
drug use, were in drug after-care programs, and agreed to drug testing, that
Julie used methamphetamine in a “binge fashion” through December of 2006, and
that returning the minor children to Julie’s home would be injurious to their
physical and emotional health.  Thus, there was a preponderance of evidence that
the order was necessary because the children’s present circumstances would
significantly impair their physical health or emotional development.  See Tex. Fam. Code Ann. § 102.004(a); Von
Behren, 800 S.W.2d at 921.  

            Further,
the grandparents have standing to file an original suit if both parents
consented to the suit.  See Tex.
Fam. Code Ann. § 102.004(a).  At the hearing on temporary orders, both
parents agreed, in open court and on the record, to the terms of the order
dictated in open court and signed by the trial court.  Consent to entering the
temporary orders necessarily included consent to the filing of the suit.  See
In re A.M.S., 277 S.W.3d at 98.  Further, oral consent, given by both
parents and on the record, is sufficient to grant standing even if consent was
given after the petition was filed.  See id.  Because both
parents consented to the terms of the temporary orders appointing the
grandparents, Donna and Robert, joint managing conservators of the minor
children, the parents consented to the suit.  See Tex. Fam. Code Ann. § 102.004(a). 

            Because
there was satisfactory proof to the trial court that the order requested was
necessary because the children’s present circumstances would significantly
impair their physical health or emotional development, and because both parents
consented to the suit, the grandparents had standing to file an original suit.  See
id.  Accordingly, we overrule Julie’s second issue.

 

Order Striking Pleadings

            In
her first issue, Julie argues that the trial court erred by striking her
affirmative pleadings because she was unable to pay for the costs of mediation.


 

Applicable
Law

            A
trial court’s ruling on a motion for sanctions is reviewed under an abuse of
discretion standard.  Cire v. Cummings, 134 S.W.3d 835, 838 (Tex.
2004).  The test for abuse of discretion is not whether, in the opinion of the
reviewing court, the facts present an appropriate case for the trial court’s
action.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241 (Tex. 1985).  Rather, it is a question of whether the court acted without
reference to any guiding rules and principles.  Id. at 241-42.

            A
trial court possesses all inherent powers necessary for the enforcement of its
lawful orders.  Wal-Mart Stores, Inc. v. Butler, 41 S.W.3d 816,
817 (Tex. App.–Dallas 2001, no pet.).  Further, a trial court has implicit power
to sanction for failing to obey a pretrial order.  See Tex. R. Civ. P. 166 (permitting trial
courts to enter orders establishing agreements of the parties that control the
subsequent course of the case up to trial); Williams v. Akzo Nobel Chem.,
Inc., 999 S.W.2d 836, 842 (Tex. App.–Tyler 1999, no pet.).  A trial
court’s core functions include the management of its docket and the issuance
and enforcement of its orders.  In re K.A.R., 171 S.W.3d 705, 715
(Tex. App.–Houston [14th Dist.] 2005, no pet.).  The trial court may issue
orders and, when it deems appropriate, vacate, rescind, or modify those orders.
 Id.  Lawyers and the litigants do not have such authority.  Id.
 The failure to comply with a trial court’s order to participate in
mediation constitutes significant interference with the court’s core functions
and, therefore, can support an award of sanctions imposed under the court’s
inherent power to sanction.  Id.  

            However,
sanctions imposed pursuant to the court’s inherent power must be just and
appropriate.  In re Bledsoe, 41 S.W.3d 807, 812 (Tex. App.–Fort
Worth 2001, no pet.).  A trial court abuses its discretion if the sanctions
imposed are not just.  Id. (citing TransAmerican Nat. Gas
Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)).  To
determine whether sanctions are just, we apply a two prong test.  Williams,
999 S.W.2d at 843.  First, there must be a direct nexus among the offensive
conduct, the offender, and the sanction imposed. Spohn Hosp. v. Mayer,
104 S.W.3d 878, 882 (Tex. 2003); TransAmerican Nat. Gas Corp.,
811 S.W.2d at 917.  This means that a just sanction must be directed against
the abuse and toward remedying the prejudice caused to the innocent party, and must
be visited upon the offender.  TransAmerican Nat. Gas Corp., 811
S.W.2d at 917.  The trial court should attempt to determine if the offensive
conduct is attributable to counsel only, or to the party only, or to both.  Id.;
Williams, 999 S.W.2d at 843.  Second, the sanctions must not be
excessive. TransAmerican Nat. Gas Corp., 811 S.W.2d at 917.  A
trial court must consider the availability of lesser sanctions and whether such
lesser sanctions would fully promote compliance.  Id. Lesser
sanctions must first be tested to determine whether they are adequate before a
sanction that prevents a decision on the merits of a case can be justified.  Cire,
134 S.W.3d at 840.  Case determinative sanctions may be imposed only in
exceptional cases when they are clearly justified and it is fully apparent that
no lesser sanctions would promote compliance with the rules.  GTE
Communications Sys. Corp. v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993).
However, the record must reflect that the court considered the availability of
lesser sanctions before imposing death penalty sanctions.  Cire,
134 S.W.3d at 840.  The trial court must analyze the available sanctions and
offer a reasoned explanation as to the appropriateness of the sanction imposed.
 Id. 

Analysis

            In
applying the first prong of the test to the facts presented here, we note that Julie’s
attorney cancelled the scheduled mediation before trial.  During the hearings,
the trial court heard argument by counsel for both sides, but no evidence was
presented.  The trial court stated that Julie’s attorney failed to inform the
court that she could not afford mediation, and failed to file pleadings stating
that Julie could not pay for mediation. Further, the trial court pointed out
that it sent the parties to a mediator in July of 2007 and that, until the date
of the pretrial hearing in March of 2008, no one had informed the court that
Julie did not have the money to pay for mediation.  However, the trial court did
not sanction Julie’s attorney for his omissions.  Instead, the court sanctioned
Julie for not attending the mediation by striking her pleadings, and by not
permitting her to call witnesses or put on evidence in the case.  Consequently,
this sanction was not visited upon the offender, Julie’s attorney. See TransAmerican
Nat. Gas Corp., 811 S.W.2d at 917.  Further, this sanction did not
remedy any prejudice caused to Donna and Robert when the mediation was
cancelled, but served to avoid further delay. See id.  Because
the trial court sanctioned Julie for failing to attend the mediation and not
her attorney for failing to timely inform the court that she could not afford
mediation, there is no direct nexus among the offensive conduct, the offender,
and the sanction imposed.  See Spohn Hosp., 104 S.W.3d at 882; TransAmerican
Nat. Gas Corp., 811 S.W.2d at 917.  Thus, the first prong has
not been met.

            The
second prong requires that the record reflect that the trial court considered
the availability of lesser sanctions before imposing death penalty sanctions.  See
Cire, 134 S.W.3d at 840.  Striking a party’s pleadings is a harsh
sanction that must be used as a last resort after the trial court has
considered lesser sanctions.  See id. at 842.  In all but the
most egregious and exceptional cases, the trial court must test lesser
sanctions before resorting to death penalty sanctions.  See id.
Here, the record does not reflect that the trial court considered or tested
lesser sanctions.  See id. at 840-42. The trial court’s order to
strike Julie’s pleadings stated only that it was striking Julie’s affirmative
pleadings because she failed to comply with an order to participate in
mediation.  This order is insufficient to justify the severity of the sanctions
imposed.  See Spohn Hosp., 104 S.W.3d at 883; Williams,
999 S.W.2d at 844. 

The
trial court’s findings of fact and conclusions of law are, likewise,
insufficient.  The record does not support the trial court’s finding that it
based its order striking Julie’s pleadings on her failure to participate in an
evaluation by Cox.  As noted above, Julie was assessed by Cox prior to the
cancellation of the mediation.  Further, the primary consideration in a trial
court’s decision in determining conservatorship and possession of and access to
a child is the best interest of the child.  See Tex. Fam. Code Ann. § 153.002 (Vernon 2008).  We believe that
only a most unusual set of facts would support determining conservatorship and
possession of a child without reaching the merits of the case.  See In re
Hood, 113 S.W.3d 525, 529 (Tex. App.–Houston [1st Dist.] 2003, no
pet.).  Here, the facts in this case are not so extreme, egregious, or
exceptional as to support the imposition of these sanctions without reaching
the merits to consider the best interests of the minor children.  See id.;
Otis Elevator Co. v. Parmelee, 850 S.W.2d 179, 181 (Tex. 1993).  Because
the trial court did not consider or test lesser sanctions before imposing death
penalty sanctions, the second prong has not been met.  See Cire,
134 S.W.3d at 840.

Based
on the foregoing, we conclude that the trial court’s death penalty sanctions
were not just and were an abuse of discretion.  See TransAmerican Nat.
Gas Corp., 811 S.W.2d at 917. Accordingly, we sustain Julie’s first
issue. 

 

Conclusion

            Based
on our review of the record, we have concluded that the grandparents had
standing to file suit and have overruled Julie’s second issue.  However, we have
sustained Julie’s first issue.  Therefore, we reverse the trial
court’s final order as to the issue of conservatorship and remand
this cause to the trial court for further proceedings consistent with this
opinion.  In all other respects, the order of the trial court is affirmed.[1] 
Because Julie’s first two issues are dispositive of her remaining issues, we do
not address them.  See Tex. R.
App. P. 47.1.

 

                                                                                                Sam Griffith

                                                                                                           
Justice

 

 

 

Opinion delivered January 29,
2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1]
The only affirmative pleading Julie filed was a cross petition for divorce. 
However, it appears that the trial court granted Julie and Walter’s divorce
based on Walter’s pro se response.  Moreover, the parties entered into an
agreement regarding the division of community property.  Therefore, we conclude
that the portion of the final order granting the divorce and dividing the
community property should be affirmed.